UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

ROBERT C. NETHING and
GLADYS M. NETHING,

Debtors.

Case No. 07-27145

Chapter 13

---

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION

---

The debtors filed a chapter 13 petition on September 12, 2007. The debtors' original plan proposed payments of $86.54 weekly, or $375 monthly, for 60 months. Their original B22C Form, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, reflected a bottom line monthly disposable income amount of $354.32. At the initial section 341 meeting of creditors, the trustee indicated he disagreed with deductions on several lines on the debtors' means test form and asked that it be amended. The debtors filed an amended means test form, which then reflected a bottom line number of $550.99. The debtors also filed an amended plan providing for payments of $124.62 weekly, or $540.02 monthly, for 60 months. After the trustee filed an objection to the amended plan, the debtors filed a second amended plan providing for payments of $127.15 weekly, or $550.98 monthly, for 60 months. The trustee opposed confirmation of this plan, as well. The debtors' income is above the median income for a two-person household for the State of Wisconsin and they only have unsecured non-priority claims scheduled in this case. According to Schedules I and J, the debtors' monthly net income is $957.78.

This a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of fact and conclusions of

law pursuant to Fed. R. Bankr. P. 7052.

## ISSUE

The court minutes from the January 29, 2008, preliminary hearing state the issue as follows:

> There is a deduction on line 50 for chapter 13 administrative expenses of the trustee, but the debtors' attorney's fees are not provided for in the form. The debtor's position is that the attorney is also an unsecured creditor, and the fee should be part of the total needed to be paid. The trustee counts only other unsecured creditors.

Stated another way, must a chapter 13 plan provide payments sufficient to pay unsecured creditors at least as much as is shown on the bottom line of the means test form, times 60, or must the plan provide for this amount, plus the claim for attorney's fees?

## ARGUMENTS

The trustee objected to confirmation of the debtors' plan because the means test indicates more projected disposable income is required than what is being dedicated to the plan. In the trustee's brief – which was filed before the second amended plan and subsequent objection – he argued "according to the means test, the debtor [sic] should be paying $550.99 monthly toward the unsecured claims. The plan calls for payment of $540 monthly, which is not sufficient to provide all projected disposable income under the bankruptcy code." After that brief was filed, the debtors filed their second amended plan, which provided for payments of $127.15 weekly, or $550.98 monthly, for 60 months. The trustee objected to that plan, arguing it "provides for creditors with unsecured claims to receive $29,535.40 while the means test requires $33,059.40."

The debtors argue the bottom line of the means test was not intended as an interim calculation to which other fees were supposed to be added. If Congress had intended all disposable income to be paid *only* on nonpriority unsecured debts, it could have done so. Section

2

1325(b)(1)(B) of the Bankruptcy Code requires the plan provide all of the debtors' projected disposable income received during the applicable commitment period be applied to make payments to unsecured creditors. The operative word in section 1325(b)(1)(B) is "applied," and payments to unsecured creditors have always included the trustee fee as well as a claim for the debtors' unpaid attorney's fees and other administrative fees.

## DISCUSSION

Confirmation of a chapter 13 plan is governed by 11 U.S.C. § 1325. Under that section, the court cannot confirm a chapter 13 plan, over an objection by the trustee or the holder of an allowed unsecured claim, unless (1) the plan proposes to pay the unsecured claims in full, or (2) "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). At issue in this case is whether the debtors have complied with the requirements of section 1325(b)(1)(B).

The term "disposable monthly income" means a debtor's current monthly income, as defined by section 101(10A), less amounts reasonable necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed," for charitable contributions in an amount not to exceed 15 percent of a debtor's gross income, and, if the debtor is engaged in business, for the payment of costs necessary for the continuation, preservation, and operation of that business. 11 U.S.C § 1325(b)(2). If a debtor's currently monthly income, when multiplied by 12, is greater than the median family income for a household of the same size, and

3

in the same state where the debtor resides, then the "[a]mounts reasonably necessary to be expended under [§ 1325(b)(2)], shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). Schedules I and J no longer determine plan payments for above-median income debtors.

It is undisputed that the debtors' "current monthly income" is greater than the median income for a two-person family in Wisconsin. The question of which creditors should share in the payment to unsecured creditors made by above-median income debtors has been considered by a number of courts. As was raised here, the discussion generally involves the distinction between priority and nonpriority creditors. *See generally In re Wilbur,* 344 B.R. 650 (Bankr. D. Utah 2006) (above-median debtors must pay disposable income exclusively to non-priority unsecured creditors). Here, the court has to consider specifically whether the term "unsecured creditors" includes a specific priority administrative expense claimant, i.e., the debtors' attorney.

In an article discussing the means test, Judge Wedoff foresaw this issue while analyzing the deduction for priority debt set forth in section 707(b)(2)(A)(iv):

> Though straightforward, this provision appears to raise at least two questions: First a debtor might seek to deduct not only priority claims that are actually outstanding at the time of the bankruptcy filing, but also hypothetical priority claims that might be anticipated over the five year period measured by the means test. For example, a Chapter 13 debtor's attorney's fees are a priority administrative expense under §§ 330(a)(4)(B), 502(b)(2), and 507(a)(2), and it might be argued that a debtor would reasonably incur such a priority claim in pursuing the five-year Chapter 13 plan hypothesized by the means test. This argument, however, is unlikely to be persuasive. ... [T]he means test specifically provides for one type of potential administrative expense in connection with a hypothetical Chapter 13 case – the fees assessed by the standing Chapter 13 trustee. No similar deduction is specified for debtor's attorney's fees, and so it is likely that a deduction for such fees – or any other hypothetical priority claims – would be denied under the maxim *expressio unius est exclusio alterius*.

Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 AM. BANKR. L.J. 231, 273 (2005).

4

The matter was also discussed in *Collier on Bankruptcy*, albeit from a different angle:

> [C]ourts will hopefully recognize that an administrative expense is an unsecured claim and that section 1325(b) requires funds remaining after the means test deductions to be paid to "unsecured creditors" generally, not just nonpriority creditors. "Creditor" is defined as an entity holding a prepetition claim. Normally, the debtor's attorney seeking payment of fees is seeking payment primarily of prepetition fees. Moreover, the provision merely states that unsecured creditors are the entities to be paid from disposable income. It does not limit the payments to payments on prepetition claims. In addition, interpreting section 1325(b) to preclude payment of administrative expenses would place it in direct conflict with section 1326(b), which requires payment of "any unpaid claim" under section 507(a)(2), which provides for administrative claim priority. In light of all these factors, it seems very unlikely courts will adopt a reading of the statute that precludes payment of the expenses necessary to administer the case.

8 COLLIER ON BANKRUPTCY ¶1325.08[5][c][I] (15th Ed. Revised) (citations omitted).

The court in *In re Amato*, 366 B.R. 348 (Bankr. D. N.J. 2007), addressed this issue when the chapter 13 debtors moved to modify their confirmed plan, seeking to include attorney's fees and trustee commissions in the "pot" established for payment of claims. The debtors argued the term "unsecured creditors" in section 1325(b)(1)(B) included unsecured creditors holding both priority administrative claims and priority unsecured claims. Therefore, according to the debtors, the amounts necessary for payments of attorney's fees and the trustee's commissions should not have been added onto the debtors' original pro-rata "pot plan." The trustee opposed the modified plan, arguing the debtors were obligated to pay the sum reflected on Line 58 of Form 22C to unsecured creditors with non-priority claims. The *Amato* court sustained the trustee's objection to the modified plan, finding that the statutory language of section 1325(b)(1)(B) was unambiguous and clearly directed all of a debtor's "disposable income" be paid over to unsecured creditors, leaving nothing for payment to other classes of creditors. *Id*. at 350-51. The court concluded that claims for attorney's fees and trustee commissions do not fall within the class of "unsecured creditors." *Id*. at 352. With respect to the payment of the trustee's

5

Case 07-27145-mdm    Doc 47    Filed 05/30/08    Page 5 of 7

commissions, the court pointed out that Line 50 of Form 22C provided for a deduction, and any further reduction would be double-counting. Regarding attorney's fees, the fact that Form B22C did not specifically reference a deduction for such fees under either Line 49 or Line 50 was "an unfortunate omission and continues an apparent knowing disregard for the need to compensate attorneys representing debtors' interest." *Id*. Feeling constrained by the language of the official form, the *Amato* court determined neither the trustee's commissions nor the debtors' attorney's fees should be deducted from the projected disposable income received by the trustee during the applicable commitment period. *Id*. at 353.

While sustaining the trustee's objection to confirmation, the court in *In re Puetz,* 370 B.R. 386 (Bankr. D. Kan. 2007), disagreed with the *Amato* court's analysis of the payment of attorney's fees from monthly disposable income. The *Puetz* court concluded that although creditors specifically provided for under section 707(b)(2)(A) need not share in the unsecured creditors' pool under section 1325(b)(1)(B), other unsecured creditors, not so provided for, including debtor's attorney's fees, may share in this payment. *Id*. at 391-92. In support of its conclusion, the court cited the Advisory Committee Notes to Official Form B22C:

> "The Chapter 13 form does not provide a deduction from disposable income for the Chapter 13 debtor's anticipated attorney fees. There is no specific statutory allowance for such a deduction, and none appears necessary. Section 1325(b)(1)(B) requires that disposable income contributed to a Chapter 13 plan be used to pay "unsecured creditors." A debtor's attorney who has not taken a security interest in the debtor's property is an unsecured creditor who may be paid from disposable income."

*Id*. at 391 (quoting Official Bankruptcy Form 22 Advisory Committee Note ¶ D.3). The court read "unsecured creditors" in section 1325(b)(1)(B) as a catchall phrase to address all unsecured creditors, priority and non-priority, not specifically referenced elsewhere. *Id*. at 391-92.

I find the *Puetz* reasoning persuasive. Congress opted for a set formula in determining

6

what a chapter 13 debtor must pay into a plan, regardless of ability to pay. It allowed for deduction of amounts needed to pay the trustee, which means the creditors, not the debtor, foot the cost of administration by the trustee. This is because the trustee still collects from the amount paid in, even though that cost was deducted from the amount the debtor must pay. Thus, it appears Congress thought about administering a case and made a provision for who pays for it. It follows then that the beneficiaries of the administration of the case were also considered and provided for, and those beneficiaries are "unsecured" creditors, without limitation as to priority or general. This is no stealth distinction, as the need for a debtor's attorney, unpaid at the start of a case, was well known to the drafters as commonplace. Other unspecified and unsecured administrative expenses must be paid as well. The end result is that creditors who receive distributions, or at least qualify to, share in the cost of administering the case, including the cost of the debtor's attorney who helped file it. There may be times when the priority unsecured creditors will receive all distributions to unsecured creditors, but that is one of the possible consequences of a set formula.

 For the reasons discussed above, the trustee's objection to confirmation is overruled. A separate order consistent with this decision will be entered.

May 30, 2008

          Margaret Dee McGarity
          Chief Judge, U.S. Bankruptcy Court